UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| United States of America ex rel. The Tarbell Group, LLC,<br><br>Plaintiff<br><br>v.<br><br>Greene County Partnership Inc., Jeffrey D. Taylor, and Unknown John or Jane Does,<br><br>Defendants | Case no. 1:25-cv-110-TRM-CHS |

**RELATOR'S OPPOSITION TO DEFENDANTS GREENE COUNTY PARTNERSHIP, INC. AND JEFFREY D. TAYLOR'S MOTION FOR SUMMARY JUDGMENT ON THE PUBLIC-DISCLOSURE BAR**

Plaintiff-relator The Tarbell Group, LLC ("Relator") opposes the motion for summary judgment ("Motion") filed by defendants Greene County Partnership, Inc. ("GCP") and Jeffrey D. Taylor (together, the "Movants") on the public-disclosure bar of the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA" or the "Act").[1] Docs. 52, 52-1, 53. Like the similar case pending in this Court, *United States ex rel. Tarbell Group, LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111 (E.D. Tenn.) ("*BTVAR*"), this case turns entirely on non-public documents, namely, GCP's Paycheck Protection Program ("PPP") loan applications and forgiveness applications. The public disclosure bar therefore does not apply.

## SUMMARY

The Motion describes this action as "identical" to *BTVAR*, and it is built on the framework of the Court's order in that case. Doc. 53, at 2, 6. The Motion rests on the same three premises as the joint motion for summary judgment in *BTVAR*: that GCP received Paycheck

[1] The public-disclosure bar is an affirmative defense that may be raised by a defendant under the Act where "substantially the same allegations or transactions" alleged in the complaint were "publicly disclosed" in any of three enumerated sources: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media," with exceptions not relevant here. 31 U.S.C. § 3730(e)(4)(A). In this brief, "enumerated sources" refers to those three sources.

Protection Program ("PPP") loans whose details were public, Doc. 52-1 ("App'x") 1, ¶ 3, that GCP is exempt from taxation under section 501(c)(4) of the Internal Revenue Code and that classification was public, App'x 1, ¶ 1, and that the program's rules were published in the Federal Register. App'x 80-114. It draws on the same SBA data release, described in a declaration of the same defense counsel, App'x 3-6, and it asks the same question: whether those true facts amount to a public disclosure of "substantially the same allegations or transactions" as a complaint alleging that GCP knowingly certified an eligibility it did not possess, in documents that the Movants do not contend any enumerated source published.

Relator answered that question on October 26, 2026, in its opposition to the *BTVAR* joint motion. *BTVAR*, Doc. 161 ("*BTVAR* Opp."), a copy of which is attached as Exhibit 1. Because the two motions present the same question to the same Court on a similar record, and because the Movants have adopted the *BTVAR* order as their template, Relator incorporates the *BTVAR* opposition by reference rather than repeat it, and confines this brief to what is particular to this case. The *BTVAR* opposition shows that in this Circuit a transaction is a public disclosure of fraud only when an enumerated source either alleges fraud outright or reveals both the misrepresented state of facts and the true state of facts, *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823-24 (6th Cir. 2021); that a loan record, a tax return, and a published rule reveal the true state of facts and no representation by the borrower; that ineligibility is a legal conclusion no source draws and in any event demonstrates error not fraud; that the only federal court of appeals to consider a public-disclosure defense built on this data rejected it; and that every authority on which the Movants rely involved an enumerated source that accused the defendant of fraud or published its misrepresentation. *BTVAR* Opp., at 5-22. Each of those points applies equally to this record.

Four additional factors in this case weigh against the Motion.

First, the Motion asserts that section 501(c)(4) organizations "were never eligible for PPP loans" and that their ineligibility was "categorical and unconditional." Doc. 53, at 10-11. For PPP Loans after December 27, 2020—including GCP's second-draw loan—that is incorrect. The Economic Aid Act made destination marketing organizations eligible on stated conditions, as the rule reproduced in the Movants' appendix demonstrates, App'x 92, and GCP's answer pleads that GCP is a destination marketing organization that "met the criteria for eligibility." Doc. 28, at 1, 3-4. Whether GCP met those conditions is a disputed question of fact that no enumerated source resolves. For GCP's second-draw loan and its forgiveness, the Movants' premise is therefore false, and this case presents the precise point on which the Ninth Circuit reversed in *United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785, 793 (9th Cir. 2026): a public record that does not address the exceptions does not disclose ineligibility.

Second, two of the four claims rest on GCP's forgiveness applications, on forms the Motion cannot identify. Doc. 53, at 13. The Motion treats the four claims as one and makes no separate showing on three of them.

Third, the Motion treats the naming of Mr. Taylor as an "end-run" around the bar. Doc. 53, at 15. But no enumerated source identifies his involvement in procuring GCP's PPP loans. The disclosure the Movants rely upon, a Form 990 signed by Mr. Taylor as President and CEO, discloses his office, not his role in the procurement of the loan. No enumerated source reveals that he signed the four applications at bar, or that he caused GCP to obtain the PPP funds.

Fourth, the posture of discovery differs. Discovery has been open in this case since July 2026 and was never stayed, GCP's initial disclosures identify its applications and the witnesses to its destination-marketing status, and the Movants filed this Motion twenty-nine days after the First Amended Complaint. If the Court concludes that the content of GCP's applications bears on the Motion, Rule 56(d) relief is warranted, and the accompanying declaration identifies the narrow discovery required.

## STATEMENT REGARDING THE RECORD

Relator's stipulation, App'x 1, concedes three points and reserves four. Relator does not contest that GCP's tax-exempt status was disclosed from an enumerated source before suit, App'x 1, ¶ 1, does not claim to be an original source, App'x 1, ¶ 2, and does not contest that ten listed data points about each loan, including the entries in the "BusinessType" and "NAICSCode" fields of the SBA's loan-level data, were so disclosed. App'x 1, ¶ 3. Relator does not stipulate that any enumerated source disclosed GCP's completed loan or forgiveness applications, any certification in them, or any defendant's knowledge or state of mind, that any blank SBA form was publicly disclosed through an enumerated source before suit, that any source disclosed which form or certification language GCP used, or that the stipulated information constitutes "allegations or transactions." App'x 1-2, ¶ 4.

The appendix contains the stipulation, defense counsel's declaration, App'x 3-6, a screenshot of the SBA's loan-level spreadsheet, App'x 27, a ProPublica article and a court order concerning the SBA's data release, App'x 28-40, GCP's Form 990 for tax year 2021 and its document properties, App'x 41-79, three interim final rules, App'x 80-114, a blank Borrower Application Form, App'x 115-18, a ProPublica page, App'x 119-23, and three different blank forgiveness forms. App'x 124-41.

Four features of the appendix matter to adjudication of the Motion. First, the SBA's loan-level spreadsheet carries no field for a section 501(c) classification, and its "BusinessType" field reads "Corporation" for both of GCP's loans. App'x 27. Counsel's declaration describes that entry as "the type of business the SBA listed for GCP." App'x 4, ¶ 9. The classification therefore comes from a different source, a Form 990 for tax year 2021 that was created on October 31, 2023, App'x 5-6, ¶¶ 14-16, after both loans had been made and forgiven, and that says nothing about the Paycheck Protection Program. Second, the three forgiveness forms are Form 3508S as revised July 30, 2021, Form 3508EZ effective November

30, 2020, and the Form 3508 calculation form effective November 30, 2020. Doc. 52-1, at 3. GCP's second-draw loan was forgiven on June 29, 2021, App'x 27, a month before the first of those forms was revised into the version the appendix contains. Third, the rule the Movants cite for the proposition that section 501(c)(4) organizations "were never eligible," Doc. 53, at 10, is in their appendix, and it states that destination marketing organizations were eligible. App'x 92. Fourth, nothing in the appendix mentions GCP or Mr. Taylor in connection with eligibility, an application, any representation to the United States, the falsity thereof, or the knowing character of any false representation.

The First Amended Complaint pleads four claims: the first-draw application of April 2020, Doc. 47, ¶¶ 17-21, the second-draw application of February 2021, *id.*, ¶¶ 22-26, the first-draw forgiveness application, *id.*, ¶¶ 27-34, and the second-draw forgiveness application. *Id.*, ¶¶ 35-42. It pleads that GCP was ineligible for its second-draw loan on two grounds, that a borrower ineligible for its first-draw loan was ineligible for a second, and that GCP "did not satisfy the conditions of eligibility applicable to destination marketing organizations." *Id.*, ¶ 25. GCP's answer asserted as its First Defense that GCP "is also a Destination Marketing Organization," denied ineligibility on that ground, and asserted that its applications were "accurate and complete." Doc. 28, at 1, 3-4. Its initial disclosures identify representatives of the Tennessee Hospitality & Tourism Association as witnesses to GCP's "status as a Destination Marketing Organization," and places the documents concerning its applications at GCP, at its counsel, and at its lender. Fein Decl. Ex. A, at 3-4.

## ARGUMENT

### I. The Motion presents the same question briefed in *BTVAR*, and warrants the same answer.

The *BTVAR* opposition addresses the governing law and a record assembled from the same sources as the Movants' appendix, and Relator incorporates it in full. Its argument runs as follows. The bar reaches only a direct allegation of fraud or the revelation of both a false and a

true state of facts, and the Sixth Circuit has enforced that requirement in the relator's favor where the public documents showed what happened but not what was represented. *BTVAR* Opp., at 5-9. A loan record, a Form 990, an interim final rule, and a blank application form are the true state of facts and contain no representation by any borrower. *Id.*, at 9-11. The Movants' theory treats the true facts alone as a disclosure of fraud, which *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655-56 (D.C. Cir. 1994), and the Sixth Circuit's reading of it foreclose. *BTVAR* Opp., at 11-13. The Court's framework in its *BTVAR* order, applied to a completed record, shows the true state of facts and no misrepresented one, and *Erskine* and the district court decisions on the same PPP data so hold. *Id.*, at 13-17. A classification is a fact, while ineligibility is a legal conclusion that no enumerated source draws about any defendant. *Id.*, at 17-19. Fraud under the Act requires a knowing misrepresentation, so that a record which at most reveals an erroneous loan reveals no fraud. *Id.*, at 19-20. And each of the authorities on which the Motion relies involved an enumerated source that accused the defendant of fraud or published its representation. *Id.*, at 21-22.

Three features of the Motion that have no counterpart in *BTVAR* warrant attention. First, the Movants open with the proposition that the Act "is not a means for a private plaintiff to bring a fraud claim based on publicly disclosed information of which the Federal government already has knowledge," Doc. 53, at 1-2, citing a page of *United States ex rel. Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 958 F. Supp. 2d 846, 855 (E.D. Tenn. 2013), that recites the parties' contentions. Unlike in this case, *Stratienko* applied the bar to allegations that "derive[d] their very essence from matters that ha[d] already been raised publicly in the United States' draft FCA complaint, which was covered by the media and referenced in Relator's husband's litigation," *id.*, at 863, disclosures the defendant there described as "repeated, explicit, and public allegations of fraud." *Id.*, at 855 (reciting the defendant's contention). Second, the Movants also observe that Relator "has no insider information." Doc. 53, at 2. That

is the reason the original-source exception[2] is unavailable to Relator, not evidence that any source disclosed a fraud. The Ninth Circuit reversed a public-disclosure dismissal built on the same data although the relator there likewise did not claim to be an original source. *Erskine*, 182 F.4th at 792 n.2. Third, the Movants acknowledge that the public disclosure bar inquiry proceeds claim by claim, Doc. 53, at 5, which follows from the statute's direction that dismissal be of an "action or claim." 31 U.S.C. § 3730(e)(4)(A).[3] Relator agrees. Parts III and IV below show that on three of the four claims, the Movants have made no showing at all.

**II. The appendix in this case confirms that no representation by GCP was disclosed.**

The *BTVAR* joint appendix included loan entries describing eleven of sixteen movants as a "Non-Profit Organization." *BTVAR* Opp., at 4. The entry for both of GCP's loans is "Corporation." App'x 27. The entry is not a representation of a tax classification or of eligibility. The tax classification on which the Motion depends appears only in a Form 990 for tax year 2021, created in October 2023, App'x 5-6, ¶¶ 14-16, three years after the first-draw loan and two years after the second, and that return says nothing about the Paycheck Protection Program. What GCP reported to its lender is among the facts contained in the non-public applications. A federal report that records a borrower's corporate form has not revealed what the borrower certified.

The application form in the appendix is version 3, dated March 30, 2020. Doc. 52-1, at 3; App'x 115-18. Its "Check One" list of business types offered "501(c)(3) nonprofit" and "501(c)(19) veterans organization" and no box for an organization described in section 501(c)(4). App'x 115. Which form GCP used, which box it checked, what it attached, and who signed are unstated by this record. The forgiveness applications present the same gap in sharper form. The appendix tenders three forgiveness forms with different certifications, App'x 124-41, and

[2] 31 U.S.C. § 3730(e)(4)(B).

[3] The Movants cite *United States ex rel. Marshall v. Univ. of TN Med. Ctr. Home Care Servs., LLC*, No. 3:17-CV-96, 2021 U.S. Dist. LEXIS 159167, at *26 (E.D. Tenn. Aug. 23, 2021), for the claim-by-claim rule. Doc. 53, at 5. *Marshall* applied the first-to-file bar of § 3730(b)(5). The statutory text supplies the rule here.

the memorandum faults the First Amended Complaint for not pleading which form GCP used. Doc. 53, at 13. Relator cannot say which one GCP used, because no public source discloses it, and a defense of public disclosure cannot be carried by faulting the relator for not knowing what was never disclosed. The documents that would answer the question are in the hands of GCP and its lender, Fein Decl. Ex. A, at 4, and in no enumerated source.

## III. For GCP's second-draw loan, the premise of categorical ineligibility is wrong, and whether GCP fell within the destination-marketing exception is a disputed question that no enumerated source resolves.

The Movants assert that section 501(c)(4) organizations "were never eligible for PPP loans," and that their ineligibility "was categorical and unconditional — no interim final rule, SBA guidance, or exception permitted a § 501(c)(4) entity to qualify for a PPP loan before its respective eligibility date, foreclosing any argument that individualized inquiry is needed to determine any Defendant's ineligibility." Doc. 53, at 10-11. The assertion is the foundation of the Motion, because the inference the Movants ask the Court to draw is that "organizations with the Defendant's 501(c) status were ineligible for PPP Loans when the Defendant received the benefits." Doc. 53, at 6. Relator disputes that proposition, for the reasons given elsewhere in this brief and Relator's *BTVAR* opposition. For the second-draw loan of February 2021 and its forgiveness in June 2021, the assertion is also factually incorrect.

Section 318 of the Economic Aid Act, enacted December 27, 2020, made "[a]ny destination marketing organization" eligible for a covered loan if it satisfied three limits on lobbying, employed not more than 300 employees, and was "described in section 501(c) of title 26 and . . . exempt from taxation under section 501(a) of such title." 15 U.S.C. § 636(a)(36)(D)(vii)(II). A "destination marketing organization" is a nonprofit entity described in section 501(c) that is "engaged in marketing and promoting communities and facilities to businesses and leisure travelers." *Id.* § 636(a)(36)(A)(xv). The rule the Movants call the January 2021 Rule, which they reproduce in their appendix and cite for the proposition that section 501(c)(4) organizations "were never eligible," Doc. 53, at 10, says this: "Are destination marketing

organizations eligible for PPP loans? Yes. Under the Economic Aid Act, any destination marketing organization is eligible to receive a PPP loan as long as other eligibility requirements are met and if" the five conditions are satisfied. Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3697 (Jan. 14, 2021) (App'x 92). The rule governing second-draw loans lists "destination marketing organization" among eligible applicants. Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3717 (Jan. 14, 2021). And the rule the Movants call the March 2021 Rule, also in their appendix, lists "an eligible destination marketing organization" among eligible borrowers. 86 Fed. Reg. 15083, 15085 (Mar. 22, 2021) (App'x 110).

GCP has raised this point in its defense. Its answer pleaded that it "is also a Destination Marketing Organization," that the Economic Aid Act "included certain Destination Marketing Organizations as eligible for the PPP Program even if they were also a 501(c)(4) Organization," and that GCP "met the criteria for eligibility for PPP Program loans." Doc. 28, at 1, 3-4. Its initial disclosures name witnesses to its "status as a Destination Marketing Organization." Fein Decl. Ex. A, at 3. Relator pleads the contrary, that GCP "did not satisfy the conditions of eligibility applicable to destination marketing organizations." Doc. 47, ¶ 25. The conditions turn on facts: the share of GCP's receipts and activities devoted to lobbying, the cost of its lobbying in the tax year that ended before February 15, 2020, its employee count, and whether its activities met the statutory definition. The Appendix does not state GCP's lobbying receipts or activities for the period of the application or the cost of its lobbying in the relevant tax year, and it draws no conclusion about eligibility.

This is the situation addressed by *Erskine*, the only circuit court case Relator is aware of to address the public disclosure bar in the PPP context. *Erskine* held that the SBA loan data "does not reveal that [the borrower] was categorically ineligible to receive PPP funds," because

exceptions to the lender exclusion existed. "[S]tanding alone, the NAICS code does not conclusively demonstrate [the borrower's] ineligibility given the existence of these exceptions," and a court that treats the entry as disclosing ineligibility without asking "whether the code shed any light on whether [the borrower] fit into any of the exceptions" has "impermissibly assessed" the theory "at the highest level of generality." 182 F.4th at 793 (cleaned up).

The *BTVAR* movants may answer that *Erskine* differs because the ineligibility there turned on exceptions while the ineligibility of their classifications admitted of none; Relator disagrees that the difference is dispositive. *BTVAR* Opp., at 14. Regardless, that answer is unavailable as to GCP's second-draw loan. The exception exists, GCP is the party asserting it, and the SBA loan data and Form 990 the Movants tender do not resolve it. For GCP's second-draw loan and its forgiveness, the Movants' third proposition, that every organization of GCP's classification was ineligible when it received the benefits, is not merely undisclosed. As a categorical statement it is incorrect, and whether GCP fell within the exception is a question that GCP's pleading places in dispute and that no enumerated source resolves.

The Movants' premise holds only for the first-draw loan of April 2020 and its forgiveness in December 2020, both before the Economic Aid Act. For those transactions the Relator's argument in the *BTVAR* opposition governs without modification: the classification was public, the rule was public, and the certification was not. *BTVAR* Opp., at 9-20.

## IV. The Motion does not address the second-draw and forgiveness claims.

The Motion addresses the four claims as one. Doc. 53, at 5. They are not one, and the Movants have made no separate showing on three of them: the second-draw application, and both forgiveness applications.

The Second Cause of Action rests on the second-draw application, submitted between January 8 and February 5, 2021. Doc. 47, ¶¶ 22-26. Throughout that period a section 501(c)(4)

organization that was a destination marketing organization meeting the statutory conditions was eligible for a loan, 15 U.S.C. § 636(a)(36)(D)(vii)(II), and the Movants' premise of categorical ineligibility was false. Relator's principal theory for that loan is a different rule: "[a]n entity that is ineligible to receive a First Draw PPP Loan under the CARES Act or Consolidated First Draw PPP IFR is also ineligible for a Second Draw PPP Loan," so that "a borrower that received a First Draw PPP Loan despite being ineligible to receive the loan is not eligible to receive a Second Draw PPP Loan." 86 Fed. Reg. at 3715. That rule was published, and a reader who knew it and knew the first-draw facts could reason from them to the conclusion that the second-draw loan should not have been made.

But the claim is not that the loan should not have been made. It is that GCP certified on Form 2483-SD that it was eligible and that the certification was knowingly false, Doc. 47, ¶¶ 23, 25, and no source discloses that certification or anything about GCP's knowledge. Relator's second theory, that GCP did not satisfy the destination-marketing conditions, *id.*, ¶ 25, turns on facts that GCP disputes, Doc. 28, at 1, 3-4, and that no source resolves. *See* Part III, above.

The Third and Fourth Causes of Action rest on the forgiveness applications. Doc. 47, ¶¶ 27-42. The certifications pleaded there are not the eligibility certification the Motion discusses. They are certifications that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects," that the amount requested "was used to pay costs that are eligible for forgiveness," and that "[t]he Borrower has complied with all requirements in the Paycheck Protection Program Rules." *Id.*, ¶¶ 29-30, 37-38. The complaint pleads that those certifications were false because GCP was never entitled to the proceeds and "proceeds it was never authorized to receive could not be expended by it upon any purpose eligible for forgiveness." *Id.*, ¶¶ 33, 41.

The falsity alleged for these claims derives in part from the ineligibility alleged for the loans, *id.*, ¶¶ 33, 41, and to that extent the claims stand or fall with the loan claims.

But they rest on different certifications in different documents, and the Movants have not addressed either. The appendix contains no forgiveness application, does not say which of three forms GCP used, Doc. 53, at 13, and tenders for the second-draw forgiveness a form dated a month after that forgiveness was granted. Doc. 52-1, at 3; App'x 27, 124. The Motion's only treatment of these claims is the sentence that GCP "certified again it was eligible to receive PPP loans when it applied for forgiveness of its loans," Doc. 53, at 13, for which it cites counsel's declaration and the SBA spreadsheet, *id.* (citing App'x 4, 28), which record the fact and date of forgiveness alone, not a representation. The statute directs dismissal only of an "action or claim" as to which the showing has been made that the public disclosure bar applies. 31 U.S.C. § 3730(e)(4)(A). On the Second, Third, and Fourth Causes of Action the Movants have attempted no such showing.

## V. No enumerated source discloses that Mr. Taylor executed the applications, so the claims against him do not rise or fall with the claims against GCP.

The Movants argue that Relator may not "revive an otherwise barred claim simply by naming a corporate officer," and that naming Mr. Taylor is an "end-run around the statute." Doc. 53, at 15. The argument assumes that the claims against GCP are barred. They are not, for the reasons given in the *BTVAR* opposition and above. And the claims against Mr. Taylor fail the bar for a reason of their own.

The First Amended Complaint alleges that Mr. Taylor "signed, submitted, or caused to be signed and submitted the loan applications and forgiveness applications" and "made or caused to be made the false certifications of eligibility," Doc. 47, ¶ 5, and that GCP made each loan certification "acting by and through and at the direction of" him. *Id.*, ¶¶ 18, 23. No enumerated source discloses any of that. The Movants' showing as to Mr. Taylor is that he was GCP's President and CEO and signed its Form 990 for tax year 2021 in that capacity. Doc. 53,

at 11-12 (citing App'x 5, 43). That return was created in October 2023, App'x 5-6, ¶¶ 14-16, and it discloses the office Mr. Taylor held when it was prepared. It does not disclose that he signed, submitted, or directed any application to GCP's lender or to the SBA in 2020 or 2021, what any application said, or what he knew. The SBA loan data in the appendix name no individual. App'x 27. The Movants describe the allegation that Mr. Taylor signed or caused the submission of the applications as pleaded "[o]n information and belief," Doc. 53, at 14, and the disclosures they identify as to him are "Mr. Taylor's position as GCP's President and CEO." *Id.*, at 15. Who executed the applications is among the facts that the applications would show and that no enumerated source has published. Fein Decl. ¶ 5. A source that reveals an officer's title has no more revealed his part in a transaction than a source that reveals a borrower's corporate form has revealed what the borrower certified.

The Movants' authorities do not fill that gap. In *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 526 (6th Cir. 2020), *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 849 (6th Cir. 2020), and *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 514 (6th Cir. 2009), an enumerated source had already alleged the fraud, through an intervened qui tam action, its settlement, and Department of Justice press releases in *Maur*, prior qui tam complaints against the same corporate parent in *Holloway*, and a prior complaint describing the kickbacks in *Poteet*, and the question was whether a relator could escape the bar by adding a participant in a fraud that had been publicly alleged. *BTVAR* Opp., at 21-22. Here no source has alleged a fraud by anyone, and the claims against Mr. Taylor rest on an additional fact, that he executed the certifications, that no source has disclosed either. The bar applies claim by claim, Doc. 53, at 5, and on the claims against Mr. Taylor the Movants have shown the disclosure of his title and nothing else. Those claims would survive the Motion even if the claims against GCP did not.

## VI. Alternatively, the Court should defer the Motion under Rule 56(d).

If the Court concludes that the content of GCP's applications or forgiveness applications, or GCP's status as a destination marketing organization, bears on whether the public sources disclosed substantially the same transactions, Relator requests relief under Rule 56(d). The governing standard is set out in the *BTVAR* opposition, at 22-23: a party who "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" may obtain deferral or denial of the motion, Fed. R. Civ. P. 56(d), ruling on summary judgment before any opportunity for discovery "is likely to be an abuse of discretion," *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)), and the request must identify the need for discovery, the material facts sought, and why they have not been obtained. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

The posture here differs from *BTVAR*, where the Court ordered expedited summary-judgment briefing because "[p]roceeding with discovery before resolving this issue would be an inefficient use of the parties' time and resources." *BTVAR*, Doc. 149, at 11. In this case the stay of deadlines was lifted on July 8, 2026, Doc. 37, the parties conferred under Rule 26(f) and filed their report on July 17, 2026, Doc. 39, the Scheduling Order was entered on July 27, 2026, Doc. 40, and discovery was never stayed. GCP stated in the Rule 26(f) report that it intended "to address the possibility of securing a stay of discovery" while its dispositive motions were pending, Doc. 39, § B, moved for judgment on the pleadings the day the Scheduling Order was entered, Doc. 41, and the Movants filed this Motion twenty-nine days after the First Amended Complaint was filed. Docs. 47, 52. Fein Decl. ¶¶ 2, 7. Relator served no requests while the Rule 12(c) motion was pending and the pleadings were being amended, and did not oppose the Movants' request for leave to file this Motion, Doc. 50, because on the stipulated record the bar

presents a question of law that does not depend on what the applications contain. Fein Decl. ¶ 7.

The accompanying declaration identifies the requisite discovery: GCP's two completed applications and two completed forgiveness applications, with any addenda and attachments, which show which forms and versions GCP used, what it certified, what business type it reported, who signed, and what it attached, together with the documents bearing on GCP's asserted status as a destination marketing organization. Fein Decl. ¶¶ 4-6. Those facts bear on the public-disclosure question, not only on the merits. An applicant that checked "Other" and attached a statement of its classification, or that disclosed its classification to its lender, made a different representation, and a public record cannot be substantially the same as a representation that was never made. The version of the form, the forgiveness form, and the certification language GCP used bear on what it represented as well. Fein Decl. ¶¶ 5-6. The Rule 26(f) report lists the applications as the first subject on which discovery may be needed, Doc. 39, § B, and GCP's initial disclosures say that they are with GCP, its counsel, and its lender. Fein Decl. Ex. A, at 4. None has been produced. The documents are in the hands of the Movants and their lender and can be obtained within sixty days. Fein Decl. ¶ 8.

## CONCLUSION

The Movants must show that an enumerated public source revealed both the true state of facts and the misrepresented state of facts before this action was filed. They can show only the first for the first-draw loan, and neither for the second-draw. They cannot show the second for any claim, because the only documents in which GCP represented anything to the United States are its applications, and the Movants identify no enumerated source that published them. For the reasons stated in the *BTVAR* opposition and above, the Motion should be denied. At a minimum it should be denied as to the Second, Third, and Fourth Causes of Action, which it

does not address, and as to Mr. Taylor, against whom the Movants have shown the disclosure of a title and nothing else. In the alternative, the Court should defer ruling under Rule 56(d).

Respectfully submitted,

*/s/ Bruce Ellis Fein*

Bruce Ellis Fein
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390
Attorney for Relator