# EXHIBIT 1

**Relator's Opposition to Defendants' Joint Motion for Summary Judgment on the Public-Disclosure Bar**

***United States ex rel. Tarbell Group, LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111 (E.D. Tenn.), Doc. 161 (Oct. 26, 2026)**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| United States of America ex rel.<br>The Tarbell Group, LLC,<br><br>Plaintiff<br><br>v.<br><br>Bristol TN-VA Association of Realtors, et al.,<br><br>Defendants | Case no. 1:25-cv-111-TRM-MJD |

**RELATOR'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT ON THE PUBLIC-DISCLOSURE BAR**

Plaintiff-relator The Tarbell Group, LLC ("Relator") opposes the joint motion for summary judgment filed by sixteen of the defendants (the "Movants") on the single ground the Court set down for expedited decision, the public-disclosure bar of 31 U.S.C. § 3730(e)(4)(A). Doc. 149, at 11-12. The motion does not concern the defendants who did not join it.

**SUMMARY**

The False Claims Act ("Act," or "FCA") imposes liability for "knowingly" making a misrepresentation to obtain payment from the government. 31 U.S.C. § 3729(a) & (b). "Knowingly" is broadly defined to encompass not only actual knowledge of falsity, but reckless disregard or deliberate ignorance of the truth. *Id.*, § 3729(b)(1). A claim under the Act, therefore, requires both knowledge and a misrepresentation. Mere ineligibility to receive the payment is not enough. A defendant must make a representation that is (a) knowingly (b) false or fraudulent.

The public disclosure bar is an affirmative defense that may be raised by an FCA defendant where "substantially the same allegations or transactions" alleged in the complaint were "publicly disclosed" in any of three enumerated sources: "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional,

Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media," with exceptions not relevant here. *Id.*, § 3730(e)(4)(A).

The bar does not apply here because two key elements of the FCA claims at bar—knowledge (as broadly defined by the Act) and a misrepresentation—were not publicly disclosed by any enumerated source. Those elements appear in the complaint alone. Numerous courts have so held in rejecting the bar in the PPP context, as detailed starting on page 14 below.

The Movants' invocation of the bar rests on a syllogism with three premises: First, that each Movant received a loan under the Paycheck Protection Program, and the details of that loan were public. Doc. 158-1 ("JA") 1, ¶ 4. Second, that each Movant held a stated classification under section 501(c) of the Internal Revenue Code, and that classification was public. JA 1, ¶ 2. Third, the rules of the program, which until stated dates excluded organizations of those classifications, were published in the Federal Register. JA 74-108. Relator stipulated to the first two premises and does not dispute the third. The Court therefore must decide a clean question of law on the point its order left open: whether those three true facts, gathered by a reader from a spreadsheet on one federal website, a tax return on another, and three notices in the Federal Register, amount to a public disclosure of "substantially the same allegations or transactions" as a complaint alleging that each defendant knowingly and falsely certified eligibility, in a document that the Movants do not contend any enumerated source published.

The answer to the question is no, for three reasons.

First, in the Sixth Circuit, a transaction is a public disclosure of fraud only when an enumerated source either alleges fraud outright or reveals both the misrepresented state of facts and the true state of facts. *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823-24 (6th Cir. 2021). The Movants' enumerated sources reveal only the true state of facts. No

enumerated source in the Joint Appendix contains a representation by any defendant about anything, let alone a knowingly false certification.

Second, even assembled together, the Movants' sources do not yield the inference they claim. The conclusion that an organization was forbidden to borrow on a given day is a legal conclusion that no source draws about any defendant. Numerous cases, discussed below starting on page 14 below, have held that such bare-bones details of PPP loans do not constitute public disclosure of PPP fraud in an enumerated source, including the only Circuit court decision to address the issue.

Third, the motion does not reach the Second Cause of Action. The framework on which it rests turns on whether organizations of the borrower's classification were ineligible on the date of the loan, and on the dates of the two second-draw loans at issue, March 8 and March 12, 2021, section 501(c)(6) organizations had been eligible for more than two months. The memorandum confines its table to first loans and never mentions the second-draw claims.

The Movants' position would have adverse effects ranging far beyond this case. Nearly every federal disbursement is a matter of public record, and they are almost all conditioned on a certification of eligibility. If a public record of the details of a payment, *ipso facto*, without any suggestion of a representation (let alone a knowingly false one), triggers the public disclosure bar, no qui tam action concerning a federal payment could ever be brought.

## STATEMENT REGARDING THE RECORD

The stipulation concedes four things and reserves five. Relator does not contest that each Movant's tax-exempt status was disclosed from an enumerated source before suit, JA 1, ¶ 2, does not claim to be an original source, JA 1, ¶ 3, and does not contest that ten listed data points about each loan, including the entries in the "BusinessType" and "NAICSCode" fields of the SBA's loan-level data, were so disclosed, JA 1, ¶ 4. Relator does not stipulate, and nothing in the stipulation may be read to concede, that any enumerated source disclosed any

defendant's completed loan or forgiveness application, any certification made in either, or any defendant's knowledge or state of mind, that the availability of a blank SBA form is a disclosure of any defendant's application or certification, or that the stipulated information constitutes "allegations or transactions" under § 3730(e)(4)(A). JA 2, ¶ 5.

The Joint Appendix contains the stipulation, the declaration of defense counsel describing the SBA's data release and the IRS search tool, JA 3-7, screenshots of the SBA's loan-level spreadsheets for each Movant, JA 22, three interim final rules, JA 74-108, a blank Borrower Application Form dated March 30, 2020, JA 109-12, a ProPublica page, JA 113, and a Virginia corporate record, JA 114.

Three features of the appendix are significant. First, the spreadsheet carries no field for a section 501(c) classification, and its "BusinessType" field reads "Corporation" for Green Meadow Country Club, Greeneville Moose Lodge No. 692, Knoxville Academy of Medicine, Signal Mountain Golf & Country Club, and Tennessee Valley Public Power Association, and "Non-Profit Organization" for the other eleven. JA 22. Counsel's declaration accordingly attests only that the SBA listed "many" of the Movants as nonprofit entities and that "some" Movants' nonprofit status was public. JA 5, ¶¶ 10-11. The classification therefore comes from a different source, the Forms 990 located through the IRS search tool, JA 6, ¶¶ 14-15, which say nothing about the Paycheck Protection Program. Second, nothing in the appendix mentions any Movant in connection with its eligibility, its application, or any representation it made to the United States, true or false, knowingly or innocently. Third, the blank form records what every applicant was asked. It does not record what any applicant answered.

The memorandum's Table 1 addresses only each Movant's first loan. Doc. 158, at 8 n.3.[1] The Second Cause of Action, which rests on the second-draw loans to Home Builders

[1] Table 1 also records the date of Tullahoma Chamber of Commerce's loan approval as "12/27/2020." Doc. 158, at 8. The complaint, drawing on the same SBA data, pleads April 27, 2020, Doc. 1-1, and the SBA spreadsheet in the Movants' appendix shows the same. JA 22.

Association of Greater Knoxville, approved March 8, 2021, and Homebuilders Association of Greater Chattanooga, approved March 12, 2021, Compl. ¶¶ 42-47, Doc. 1-1, is not addressed anywhere in the motion.

## ARGUMENT

### I. The bar reaches only a direct allegation of fraud or the revelation of both a false and a true state of facts.

The statute commands a comparison between what was "alleged in the action or claim" and what "were publicly disclosed" in one of three enumerated channels. 31 U.S.C. § 3730(e)(4)(A). What must have been disclosed is "substantially the same allegations or transactions." *Id.* The Sixth Circuit has explained what those words require. "First, if the information about both a false state of facts and the true state of facts has been disclosed, we [will] find that there has been an adequate public disclosure because fraud is implied. . . . Second, if there has been a direct allegation of fraud, we will find a public disclosure because such an allegation, regardless of its specificity, is sufficient to put the government on notice of the potential existence of fraud." *Rahimi*, 3 F.4th at 823-24 (quoting *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512-13 (6th Cir. 2009)). The Court quoted the same passage in its order. Doc. 149, at 6. No Movant contends that any enumerated source ever alleged a knowingly false misrepresentation, or fraud, by any defendant. The second category is not at issue.

The first is, and it requires public disclosure of two elements in the enumerated sources: the true state of facts, and the false state of facts as misrepresented by the defendant. "[I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In

---

December 27, 2020, is the date of the Economic Aid Act, which the Movants' memorandum omits from its account of when section 501(c)(6) organizations became eligible. Doc. 158, at 7. The error is harmless to Relator, and Relator notes it only because the motion depends on dates the Movants have assembled rather than on dates any source has stated about any defendant.

order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *Rahimi*, 3 F.4th at 824 (quoting *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 844 (6th Cir. 2020)). The Movants quote the same passage. Doc. 158, at 11 n.4. "Fraud consists of two elements—a misrepresented state of facts and a true state of facts—that constitute the X and the Y of the equation." *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 331 (6th Cir. 1998) (citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)).

The formula requires that the combination be publicly revealed by the enumerated sources. The disclosures may be piecemeal and the fraud may be inferred from them, but the inference must rest on what the sources reveal, and what they must reveal is a misrepresented state of facts as well as a true one.

The Sixth Circuit adopted this formula from *Springfield Terminal* in *Jones*, 160 F.3d at 331. In *Springfield Terminal*, pay vouchers filed in a public proceeding showed what an arbitrator had billed the government, and telephone records produced in litigation bore on what he had been doing on the days billed. The court held the vouchers insufficient, because "[k]nowledge of the allegedly misrepresented state of affairs—which does not necessarily entail knowledge of the fact of misrepresentation—is always in the possession of the government," and "[p]ublication of the facially valid pay vouchers, already in the government's pocket, cannot by itself be sufficient to defeat qui tam jurisdiction." 14 F.3d at 656. "Fraud requires recognition of two elements: a misrepresented state of facts and a true state of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud." *Id.*, at 655.

The Sixth Circuit agrees. *Jones*, 160 F.3d at 332 (describing *Springfield Terminal* as "holding that disclosure of facially valid pay vouchers would not defeat jurisdiction where the

records did not suggest any misrepresentation on the defendant's part in submitting them"); *United States ex rel. Dingle v. BioPort Corp.*, 388 F.3d 209, 213 (6th Cir. 2004) (explaining that in *Springfield Terminal* the vouchers and telephone records "by themselves only met the requirement that the government knew about the misrepresented state of affairs," and that the action was not barred because "the government had no way of knowing from the facially valid vouchers that the arbitrator did not work on the days for which he submitted payment requests"). *Dingle* found the bar satisfied only because "both the X and the Y are present here (albeit in different sources), or at the very least, the Z is present with sufficient particularity." 388 F.3d at 215. The sentence the Movants lift from the same opinion, that "[a]ll that is required is that public disclosures put the government on notice to the possibility of fraud," Doc. 158, at 11 (quoting *Dingle*, 388 F.3d at 214), describes the function the formula serves, not a substitute for it. The Court of Appeals' formulation is explicit: "the public disclosure bar is not implicated—even if one or more of a claim's essential elements are in the public domain—unless the exposed elements, taken together, provide adequate notice that there has been a fraudulent transaction." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918-19 (6th Cir. 2017) (reversing district-court application of the public disclosure bar because one element of claim was not publicly disclosed), quoted in *Holloway*, 960 F.3d at 850-51.

The Court of Appeals enforced the requirement in *United States ex rel. Burns v. A.D. Roe Co.*, 186 F.3d 717 (6th Cir. 1999), vacating a dismissal because the district court had "focused solely upon the 'public disclosure' element" and "failed to recognize that the public disclosure must be of 'allegations or transactions,'" words by which Congress "clearly intended that the public disclosures at issue be of something more than simple information from which no one could deduce that fraud had occurred." *Id.*, at 724. The question, the court explained, was whether the public documents "contained information as to both the actual circumstances of the construction being done on the Phalanx Project and the circumstances as they were being

represented to the government by various contractors." *Id.* Circuit courts applying the same formula elsewhere have similarly held the bar inapplicable due to the absence of disclosure of essential elements. *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1512-14 (8th Cir. 1994) (reversing dismissal where news reports, corporate reports, and creditors' meeting disclosures revealed a subsidiary's pension underfunding but not that its parent had understated the liability, because "the essential elements exposing the transaction as fraudulent must be publicly disclosed as well"); *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1044 (8th Cir. 2002) (a Medicare audit that revealed what the defendants had represented, but not that the representation was false, was not a public disclosure, because "a public disclosure must reveal both the true state of facts and that the defendant represented the facts to be something other than what they were"); *Grant ex rel. United States v. Zorn*, 107 F.4th 782, 792-93 (8th Cir. 2024) (audit letters that "revealed only the possibility of inaccurate billing" and "did not disclose that the fraudulent actions had occurred" did not trigger the bar); *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir. 2024) (reversing dismissal where the public sources "may each contain a piece of the puzzle, but when pieced together, they fail to present the full picture of fraud").

The purpose of the bar confirms the reading. Congress enacted the provision in 1986 in place of the government-knowledge bar of 1943, which had been adopted in reaction to a relator who copied a federal indictment, "in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits such as the one in *Hess*." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). In 2010 Congress replaced "based upon" with "substantially the same," *Rahimi*, 3 F.4th at 826, and confined the enumerated channels to federal proceedings, federal reports, and the news media. 31 U.S.C. § 3730(e)(4)(A); *United States ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 430 (6th Cir. 2016) (describing the 2010 changes as "new,

more lenient requirements”). The Court of Appeals reads the amended language as “more sensitive to differences between the qui tam complaint and prior disclosures than the prior ‘based upon’ language.” *Holloway*, 960 F.3d at 851. And it has held that what matters is what was disclosed to the public, not what the government possessed or could have assembled. “If a disclosure to the government in an audit or investigation would be sufficient to trigger the bar, the term ‘public’ would be superfluous.” *United States ex rel. Whipple v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 268 (6th Cir. 2015) (reversing a public-disclosure dismissal because “the Government is not the equivalent of the public domain” (quoting *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1043 (10th Cir. 2004))).

## II. No enumerated source disclosed X, any defendant’s representation about anything, and without X the bar does not apply.

### A. The Joint Appendix contains Y (the true facts) only.

A loan record is a record of what the SBA and the lender did. JA 22. A Form 990 is a tax filing that states a classification and says nothing about the Paycheck Protection Program. JA 6, ¶ 15. An interim final rule states what the law was. JA 74-108. A blank form states what every applicant was asked. JA 109-12. None is a statement by any defendant to the United States. A misrepresentation requires a representation, and the loan data contains no representation by any borrower about anything, false or true.

The certifications on which the case rests, Compl. ¶¶ 29, 39-41, exist in two documents, neither an enumerated source: the application for the loan and the application for its forgiveness. JA 2, ¶ 5(a). No Movant contends otherwise.

*Ibanez* involved a similar record. The relators there alleged that the manufacturer had induced off-label prescriptions that the government then paid for, and the defendants invoked prior public disclosures of the government’s payments and of an earlier, resolved scheme of the same kind. The court held that the payments, though public, did not disclose the fraud, because “it is this first link in the chain—the improper promotion of the drug—that is crucial,”

and "even if the scheme's other elements were publicly disclosed—e.g., it was publicly disclosed that the government had paid claims for off-label prescriptions of Abilify—the FCA is implicated only if that conduct is somehow tied back to improper promotion. Thus, no fraud was publicly disclosed without disclosure of this key element." 874 F.3d at 919. The key element here is the certification. The government's payment is public. The act that placed the payment in violation of the Act is not.

**B. A blank form discloses what the applicant was asked, not what it said.**

The Movants seek to supply the missing element with a blank Borrower Application Form, offered to show "the information and certifications applicants needed to provide." Doc. 158, at 12. The form asks the signer to certify that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted." JA 110. The form describes what every applicant was expected to certify. It does not record what any applicant certified, which box it checked, or what it attached, or what emendations it made. It was equally public in *Springfield Terminal* that arbitrators were required to bill only for days worked. What the bar requires is disclosure of the misrepresented state of facts, which here is what each defendant represented, and the record does not contain it.

The record does not establish what any Movant represented, and in one respect it leaves the question open. The form in the appendix is version 3, dated March 30, 2020. JA 109. Form 2483 was revised repeatedly, a separate Form 2483-SD governed second-draw loans, and the forgiveness certifications appear on Forms 3508, 3508EZ, and 3508S, which differ from one another and from the application. The form's "Check One" list of business types offered "501(c)(3) nonprofit" and "501(c)(19) veterans organization" and no box for an organization described in section 501(c)(6), (7), (8), or (13). JA 109. Which box each Movant checked, what it wrote, what it attached, what it certified, and who signed are unknown to this record. The SBA's loan-level data, which carry a "BusinessType" field, describe five of the sixteen

Movants as a "Corporation" and the rest as a "Non-Profit Organization." JA 22. Neither entry is inconsistent with the Movants' classifications, since a nonprofit corporation is a corporation, and neither is a representation of a tax classification or of eligibility. Whether the entries reflect what the Movants reported is among the facts the applications would reveal. Either way, a federal report that records a borrower's corporate form has not revealed what the borrower certified. The Movants, in the Rule 26(f) report, identified "[e]ach Defendant's PPP loan application, forgiveness application, and supporting documentation" as a subject on which "discovery will be needed," to be taken from "each Defendant, its lender(s), and the Small Business Administration." Doc. 96, at 2. Discovery is needed because the documents are not public, which is why X has not been disclosed.

**C. The Movants' theory treats the true facts alone as a disclosure of fraud.**

The Movants' position, stated on the reply and renewed here, is that the "transaction" is the loan, and that X requires only that public sources "disclose something inconsistent with the truth," which receipt of the loan supplies. Doc. 126, at 5, renewed at Doc. 158, at 10-12. True facts drawn from several sources can disclose a fraudulent transaction when, read together, they reveal that a representation was made and that it was false, as in *Dingle*, where the sources together revealed both. 388 F.3d at 215. The combination here reveals no representation. It reveals a loan and a tax classification, and the Movants' theory supplies the rest by assuming that any recipient of federal money who turns out to have been ineligible must have lied to obtain it. That assumption is the reader's, not the sources', and it is not a disclosure.

*Springfield Terminal* answered the argument when it set out the formula. Its rule is symmetrical. "[W]here only one element of the fraudulent transaction is in the public domain (e.g., X), the qui tam plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y) or allegations of fraud itself (e.g., Z)." 14 F.3d at 655. Where the public domain contains only Y, the relator may proceed by supplying

X. That is what Relator did. The Sixth Circuit applied the same rule to the two cases it treated as the paradigm of non-disclosure, describing them as cases in which the disclosed information "did not suggest an inference of wrongdoing or bad faith," and reading *Springfield Terminal* as "requiring disclosure of both the true and misrepresented state of facts because both are necessary 'to set government investigators on the trail of fraud.'" *Jones*, 160 F.3d at 332 (also describing *United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 742 (3d Cir. 1997), as holding that a newspaper's disclosure of a county's retention of sale proceeds "would not constitute an allegation of fraud unless it mentioned the misrepresented state of facts").

The reply contended that if the completed application were required, "the public-disclosure bar would never apply in such a case because the completed application is never public." Doc. 126, at 6. The premise is mistaken. The bar applies whenever the public sources supply the representation, by an accusation against the defendant or by publication of its content, which is what happened in every case the Movants cite. *See* Part V, below. It does not apply where the only public facts are a payment and a characteristic of the payee. The government always holds the claims submitted to it. Treating its possession of a claim, joined to public facts about the claimant, as a public disclosure of fraud would restore the government-knowledge bar that Congress repealed in 1986. *Graham County*, 559 U.S. at 294-95. The Seventh Circuit made the point in holding that government survey reports documenting a nursing home's noncompliant care, and the penalty proceedings that followed, did not disclose fraud, because "the surveys did not disclose facts establishing that Momence misrepresented the standard of care in submitting claims for payment to the government," and because the government's resulting knowledge that some claims were for noncompliant care "is not enough. The government must also have access to facts disclosing that Momence had the scienter required by the FCA." *United States ex rel. Absher v. Momence Meadows Nursing*

*Ctr., Inc.*, 764 F.3d 699, 708-09 & n.10 (7th Cir. 2014) (holding the bar inapplicable before setting aside the verdict on other grounds).

The veteran-contractor hypothetical the Movants offered on the reply, Doc. 126, at 6, demonstrates the overbreadth of their rule. A public award record discloses the government's act. Whether the contractor represented that it was veteran-owned, whether an exception applied, and whether the agency erred are not disclosed by the award alone. A relator who supplied the representation would be supplying X.

**D. The Court's framework, applied to the record the Movants have assembled, shows the true state of facts and no misrepresented one. Several courts have held, in the PPP context, that the public disclosure bar does not apply under these circumstances.**

The Court observed on the motions to dismiss that, once a defendant shows that its classification and its participation in the program were publicly available, "Plaintiff's claims of fraud can be inferred from such information," Doc. 149, at 8, and summarized the inference in the terms the Movants adopt: "fraud can be inferred if publicly available information shows that (1) a Defendant received a PPP Loan, (2) the Defendant held a certain 501(c) status when it received the loan, and (3) organizations with the Defendant's 501(c) status were ineligible for PPP Loans when the Defendant received the benefits." *Id.*, at 8 n.6. The Court anticipated a "significant likelihood that the public-disclosure bar will apply at summary judgment," *id.*, at 11.

Relator does not contest that that information was public. But each of the three propositions is a true fact (Y, in the X+Y=Z formula). None is a representation by any defendant, and none speaks to what any defendant knew. The certification enters the inference only as something the reader supplies, on the premise that a borrower who received a loan must have certified in order to get it. The knowing falsity of the certification is supplied by no one. Under *Rahimi* the inference of fraud is available when the sources, taken together, reveal both the true and the misrepresented state of facts. 3 F.4th at 823-24. The sources here reveal only

the first. The motions to dismiss were decided on the pleadings, before the Movants had tendered any evidence, and the record now presented permits the Court to apply the Circuit's framework to what the Movants have shown.

Three sets of decisions bear on the point. The first is the only decision of a court of appeals to address a public-disclosure defense built on this database. The relator in *United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026), alleged that a mortgage lender falsely certified its eligibility, and the district court held the claim barred because PandemicOversight.gov, assumed to be a federal report, recorded the borrower's receipt and forgiveness of a loan together with an industry code said to establish its ineligibility. The Court of Appeals reversed. The code "does not reveal that [the borrower] was categorically ineligible to receive PPP funds," and the district court, "[b]y analyzing only whether the NAICS code revealed that CalCon was a company engaged in lending, and not whether the code shed any light on whether CalCon fit into any of the exceptions, . . . impermissibly assessed Relator's eligibility misrepresentation theory 'at the highest level of generality.'" 182 F.4th at 793 (quoting *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 577 (9th Cir. 2016)).

*Erskine* does not bind this Court, and the Movants will say that it differs: the ineligibility there turned on exceptions the database did not address, while the ineligibility here, they say, admitted of none. Doc. 158, at 10. The distinction matters for the second-draw loans, where exceptions did exist, Part IV, below, and it does not reach the first-draw loans, because Relator does not rely on *Erskine* to dispute that the stipulated classifications were ineligible for first-draw loans. Relator relies on it for the point on which it turned: a database entry recording a characteristic of the borrower reveals the borrower and not the fraudulent transaction. The database records the loan, the Form 990 records the classification, and no enumerated source records what any Movant told its lender or the SBA.

The second set consists of district court decisions involving the same PPP database that Movants rely upon. Each applied the requirement the Sixth Circuit applies—that the disclosures expose the essential elements of the fraudulent transaction—and each held the bar inapplicable. *United States ex rel. Verity Investigations, LLC v. E&B Nat. Res. Mgmt. Corp.*, No. 1:24-cv-00928-CDB, 2026 U.S. Dist. LEXIS 232703, at *25-28 (E.D. Cal. Sept. 25, 2026) (holding, after *Erskine*, that PandemicOversight.gov data showing the employee count a borrower reported on its application, together with a Form 5500 showing a larger number of benefit-plan participants, did not disclose a fraudulent transaction, because the defendant "has not demonstrated that the public disclosures of [the] PPP loan application data revealed any misrepresented state of facts sufficient to raise an inference of the alleged fraud," and the two public figures, "without more," did not "collectively disclose a combination of facts sufficient to permit a reasonable inference of fraud"); *United States ex rel. Craig v. Hawthorne Mach. Co.*, No. 20-cv-1625, 2024 U.S. Dist. LEXIS 173872, at *37-39 (S.D. Cal. Sept. 25, 2024), *summary judgment granted on other grounds*, 2026 U.S. Dist. LEXIS 126542 (S.D. Cal. June 8, 2026) (denying dismissal based on the public disclosure bar because the claim rested on the "PPP loan application itself, which is non-public," and the public loan data revealed "only the amount of [the] PPP loan, the number of jobs retained, the date the loan was approved, the loan status, and the issuing lender"); *United States ex rel. Relator LLC v. Tennyson*, No. 2:23-cv-05887, 2025 U.S. Dist. LEXIS 194153, at *14-15 (C.D. Cal. Sept. 29, 2025) (holding, on a lender-ineligibility theory, that the loan details on PandemicOversight.gov "do not reveal facts from which fraud can be inferred," because the site's description of the borrower's industry was "'so innocuous' that there can be no disclosure of a fraudulent transaction in the first instance" (citation omitted)); *United States v. Baxter*, No. 23-cv-00336, 2025 U.S. Dist. LEXIS 88452, at *12-13 (N.D. Cal. May 8, 2025) (rejecting the defense on a private-club theory because the defendants "do not contend that the facts available on the website are

misrepresented in any way," and the data "alone simply does not disclose any allegation or transaction of fraud"); *United States v. Woodley*, No. 24-cv-01003, 2026 U.S. Dist. LEXIS 22628, at *12-13 (N.D. Cal. Feb. 3, 2026) (same, where the defendants relied on PandemicOversight.gov, news media, LinkedIn, and ZoomInfo); *United States ex rel. Relator LLC v. iLink Emps. Co.*, No. 5:22-cv-01004, 2024 U.S. Dist. LEXIS 149130, at *11-12 (C.D. Cal. July 11, 2024) (same). *Verity* and *Baxter* went on to dismiss on other grounds. *Woodley* dismissed individual defendants under Rule 9(b) while sustaining the claim against the borrower. Their holdings on the bar were unqualified. *Verity* is the most recent of these decisions, and the first decided after *Erskine*. The court accepted that both sources were federal reports and that together they showed what the borrower had reported and a larger figure in a separate filing, and it still held that the defendant had not shown a disclosed transaction, because the public sources did not supply the facts that connected the two figures. Those facts came from the relator. 2026 U.S. Dist. LEXIS 232703, at *27-28. The Movants' sources show even less: a loan and a tax classification, with no representation by any Movant in either.

The third set consists of the decisions collected in the Court's order, Doc. 149, at 6-7, and they are addressed in Part III.A below. For present purposes it suffices to say that each either involved a source that supplied the representation, or applied the reasoning that *Erskine* has since rejected.

**E. The Movants' positions in this case confirm that the public record reveals, at most, an erroneous loan.**

The Rule 26(f) report states that "[e]ach Defendant asserts that it did not intentionally or knowingly falsely certify its eligibility for the PPP loan or loans it received." Doc. 96, at 2. The reply on the motions to dismiss argued that the complaint "provides no details whatsoever as to what specific actions Defendants took that constitute fraud," and "does not describe what, when, how, or who at Defendants said or did anything (in making certifications on an application or in any other way)." Doc. 126, at 8. The Movants may plead in the alternative.

The point is narrower: on their account of the record, what each defendant said and whether it said it knowingly remain open, and a record that leaves those questions open has disclosed a loan and not a fraud.

## III. The disclosures are not "substantially the same" as the allegations.

### A. A classification is a fact. Ineligibility is a legal conclusion that no enumerated source draws about any defendant.

That a non-charitable organization is tax-exempt under section 501(c)(6), (c)(7), (c)(8), or (c)(13) is a fact, and a Form 990 states it. That an organization of that description was forbidden to receive a loan on the day it applied is a conclusion of law, drawn from the CARES Act, the interim final rule of April 15, 2020, the Economic Aid Act, the American Rescue Plan Act, and the dates on which each took effect. No document in the appendix draws that conclusion about any defendant. The Movants anticipate the objection by asserting that the ineligibility was "categorical and unconditional." Doc. 158, at 10. That is the legal conclusion restated. The question under the statute is whether a source disclosed it about this borrower, not whether a lawyer can reach it.

The decisions collected in the Court's order do not point the other way once their facts are stated. *United States ex rel. Relator LLC v. Kellog*, No. 23-CV-118-CAB-BLM, 2025 U.S. Dist. LEXIS 54257, at *8-10 (S.D. Cal. Mar. 24, 2025), *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 U.S. Dist. LEXIS 139497, at *11-12 (E.D. Cal. Aug. 5, 2024), and *Relator LLC v. Lim*, No. 22-CV-04715-AGT, 2025 U.S. Dist. LEXIS 271527, at *13-14 (N.D. Cal. Apr. 22, 2025), are district court decisions within the Ninth Circuit, each of which treated a database entry recording a borrower's type and its receipt of a loan as disclosing a fraudulent transaction. That is the reasoning *Erskine* disapproved, and *Kootstra* and *Lim* involved the same mortgage-lender theory and the same industry code on which *Erskine* reversed. In *Kellog* a news article had also named the defendant as an "exclusive" club that had received a loan, 2025 U.S. Dist. LEXIS 54257, at *8-9, and the relator

had pleaded that "even a brief review of the rules would reveal that these types of clubs cannot take PPP money," *id.*, at *10. *Kootstra* and *Lim* dismissed with leave to amend. *Kootstra*, 2024 U.S. Dist. LEXIS 139497, at *8-9, *14; *Lim*, 2025 U.S. Dist. LEXIS 271527, at *5, *18-19. *United States v. Hodges*, No. 2:22-CV-05200-FWS-GJS, 2025 U.S. Dist. LEXIS 267325, at *8-10 (C.D. Cal. Nov. 7, 2025), which the Court cited for judicial notice, Doc. 149, at 4 n.4, rested on the district court's decision in *Erskine*, which the Court of Appeals has since reversed. *Seikel v. Alvarez*, No. 1:23-CV-01, 2024 U.S. Dist. LEXIS 55478, at *8-11 (N.D.W. Va. Mar. 27, 2024), applied the Fourth Circuit's rule that the bar "encompasses actions even partly based upon prior public disclosures," placed the burden on the relator, and conducted no analysis of whether any source disclosed a misrepresented state of facts. *United States ex rel. Lesko v. Minn. Orchestral Ass'n*, No. 23-3216 (PAM/SGE), 2025 U.S. Dist. LEXIS 135122, at *9-11 (D. Minn. July 16, 2025), dismissed primarily under Rule 9(b), and on the bar relied on the relator's concession that the orchestra's "Borrower Application Form" was publicly available, *id.*, at *9, so that the headcount the application stated and the headcount the Form 990 reported were both in the public domain. *United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Grp., Inc.*, No. 24 CV 00047, 2025 U.S. Dist. LEXIS 203666, at *21, *26-27 (N.D. Ill. Oct. 15, 2025), involved a certification that no "Associate" of the borrower was under felony indictment, and news articles that reported both the indictment and the indicted individual's role in overseeing the dealerships. The relator there did not contest the court's premise that the loan data disclosed the borrower's applications "and thus their certified compliance with the rules." *Id.*, at *21. Relator contests that premise here, JA 2, ¶ 5, and for the reasons given in Part II it is mistaken: the data record the loan, not the application. In each case that applied the bar, the representation came from the public sources, through an accusation against the defendant, publication of the document containing it, or the relator's concession that the data

disclosed it. None applied the bar to a loan record joined to a tax return and a rule over the relator's objection that no representation had been disclosed.

**B. Z is fraud, not error, and error alone does not violate the Act.**

Z is "the conclusion that fraud has been committed." *Rahimi*, 3 F.4th at 824 (citation omitted). Under the Act a claim is fraudulent only if it was presented "knowingly," and the Act defines the term broadly: actual knowledge of the information, deliberate ignorance of its truth or falsity, or reckless disregard of its truth or falsity, with no proof of specific intent to defraud required. 31 U.S.C. § 3729(b)(1)(A)-(B). The breadth of the definition does not help the Movants. Each prong describes a state of mind, and a public disclosure of fraud must reveal facts from which a state of mind of one of those kinds can be inferred.

The sources here reveal none. A loan to an ineligible borrower is equally consistent with lender error, agent error, agency error, and a borrower that never read the rule. Lenders processed these loans under delegated authority, and the rules provided that "lenders will be permitted to rely on certifications of the borrower in order to determine eligibility of the borrower." Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3717 (Jan. 14, 2021).

No source in the appendix speaks to what any defendant knew, what inquiry it made, or what its banker or accountant told it. The Movants assert that none of them knowingly certified falsely. Doc. 96, at 2. A record that, on the Movants' account, reveals an erroneous loan reveals no fraud. Ineligibility is not a representation, and it is not a knowing one. Both elements come from the complaint. The Ninth Circuit made the same point in reversing a public-disclosure dismissal in which the disclosures were scattered pieces of the scheme: the relator's allegations supplied "a critical fact necessary for scienter," which no disclosure revealed, and "the scattered qualifying public disclosures may each contain a piece of the

puzzle, but when pieced together, they fail to present the full picture of fraud." *Silbersher*, 89 F.4th at 1168.

The Seventh Circuit held the same in *Absher*: the government "must also have access to facts disclosing that [the defendant] had the scienter required by the FCA." 764 F.3d at 709 n.10. In this Circuit fraud is implied from X and Y together. Without X, nothing implies it.

## IV. The Movants have made no showing on the second-draw claims, and the inference they draw for first-draw loans is unavailable for them.

The Second Cause of Action rests on the second-draw loans to Home Builders Association of Greater Knoxville, approved March 8, 2021, and Homebuilders Association of Greater Chattanooga, approved March 12, 2021. Compl. ¶¶ 42-47, Doc. 1-1, JA 22. On those dates section 501(c)(6) organizations had been eligible to borrow since December 27, 2020, under the Economic Aid Act, and since January 12, 2021, on the Movants' reading of the January 2021 Rule. Doc. 158, at 7, JA 84. The third proposition of footnote 6, that organizations of the borrower's classification "were ineligible for PPP Loans when the Defendant received the benefits," is therefore absent on the Movants' dates, and the inference the Movants draw for the first-draw loans cannot be drawn for the second from the propositions they rely on. Table 1 is confined to first loans. Doc. 158, at 8 n.3. The memorandum never mentions the second-draw loans.

Relator's second-draw theory rests on a different rule. "An entity that is ineligible to receive a First Draw PPP Loan under the CARES Act or Consolidated First Draw PPP IFR is also ineligible for a Second Draw PPP Loan," and the rule's exclusion "ensures that a borrower that received a First Draw PPP Loan despite being ineligible to receive the loan is not eligible to receive a Second Draw PPP Loan." 86 Fed. Reg. at 3715. That rule was published, and a reader who knew it and knew the first-draw facts could reason from them to the conclusion that the second-draw loans should not have been made.

But the claim is not that the loans should not have been made. It is that each borrower certified on Form 2483-SD that it was eligible, Compl. ¶¶ 42-47, and that the certification was knowingly false. No source discloses that certification or anything about either borrower's knowledge, so the second-draw claims stand on the same ground as the first-draw claims, with the added point that the Movants have not addressed them at all. The statute directs dismissal of an "action or claim" as to which the showing has been made, 31 U.S.C. § 3730(e)(4)(A), and on this claim the Movants have made none.

## V. Each of the Movants' authorities involved an enumerated source that accused the defendant or published its representation.

Relator does not dispute most of the Movants' statements of the governing standard. The cases from which those statements are drawn describe a qualifying disclosure, and none resembles this record.

In *Rahimi* the Connecticut Attorney General had announced a subpoena and accused Rite Aid of having "falsely blamed" a new state law for the changes to its discount program, the announcement had been reported nationally, the federal inspector general had announced reviews of the billing practice, and the court reasoned that the publicized change in Rite Aid's pricing "would reveal both the misrepresented facts (that Rite Aid was billing the government at its real U&C rate) and the true state of facts." 3 F.4th at 821-22, 825. In *Holloway* the disclosures were prior qui tam complaints against the same corporate parent alleging the same hospice-eligibility scheme. 960 F.3d at 845-46, 849. In *Maur* they were an earlier intervened qui tam action against the same physician, its settlement, a corporate integrity agreement, and Department of Justice press releases, and the relator conceded that the "exact scheme" had been publicly exposed. 981 F.3d at 526. In *U.S. Bank* they were a federal consent order requiring the bank to adopt "processes to review and approve standardized affidavits and declarations," a federal review finding that banks "had inadequate affidavit . . . processes," and a news report of "a pattern of misconduct and negligence." 816 F.3d at 431, 433. In *Dingle* a congressional

report recorded that the FDA had cited the defendant for manufacturing "deviations," and testimony alleged that the vaccine was not the approved one. 388 F.3d at 214. In *Poteet* a prior complaint described how the defendant paid kickbacks disguised as consulting contracts and trips. 552 F.3d at 513. In *Jones* the relator's earlier complaint had "disclosed that false claim forms were prepared." 160 F.3d at 332. In *United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 616 (6th Cir. 2015), the relators' state-court complaint and a newspaper article had alleged that the named surgeon was absent from the operation. And in *United States ex rel. O'Connor v. USCC Wireless Inv., Inc.*, 128 F.4th 276, 283 (D.C. Cir. 2025), the disclosure was a 2008 qui tam complaint against the same defendants alleging the same scheme.

In every one of those cases the enumerated source supplied X, by accusing the defendant or by publishing the representation the relator called false, and the relator added details to an accusation already made. *Rahimi* is the Movants' strongest case, because the court there held that "it requires hardly an inferential step to connect the allegedly true and allegedly misrepresented facts." 3 F.4th at 825 (citation omitted). But the step was short because the Attorney General's accusation and the national coverage described what Rite Aid had been charging the government, and a disclosure of the defendant's conduct toward the government is a disclosure of the misrepresented fact. No source here describes any defendant's conduct toward the SBA beyond the fact that a loan was made.

*United States ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111, 123-24 (D.D.C. 2015), concerns whether a government webpage is a "report," Doc. 158, at 6, a question not at bar.

## VI. Alternatively, the Court should defer the motion under Rule 56(d).

If the Court concludes that the content of any Movant's application or forgiveness application bears on whether the public sources disclosed substantially the same transaction,

Relator requests relief under Rule 56(d). A party opposing summary judgment who "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" may obtain deferral or denial of the motion. Fed. R. Civ. P. 56(d). The Court of Appeals holds that "when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (reversing a grant of summary judgment entered before discovery). The request must be specific, identifying the need for discovery, the material facts sought, and why they have not been obtained. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

The Court directed that the public-disclosure question be decided before discovery proceeds, Doc. 149, at 11, and Relator has had none. The accompanying declaration of counsel identifies the requisite discovery: each Movant's completed application and forgiveness application, with any addenda, which show which form and version it used, what it certified, what business type it reported, who signed, and what it attached. Fein Decl. ¶¶ 3-7. Those facts bear directly on the public-disclosure question, not only on the merits. An applicant that checked "Other" and attached a statement of its classification, or that disclosed its classification to its lender, made a different representation, and a public record cannot be substantially the same as a representation that was never made. Later versions of the form listed additional eligible categories, and the forgiveness forms carried different certifications, so the version and the form each Movant used bear on what it represented as well. Fein Decl. ¶¶ 4-5. The Movants themselves have identified the same documents as the first subject on which discovery will be needed. Doc. 96, at 2.

## CONCLUSION

The Movants must show that an enumerated public source revealed both the true state of facts and the misrepresented state of facts before this action was filed. They can show the

first. They cannot show the second, because the only documents in which any defendant represented anything to the United States are the applications, and the Movants identify no enumerated source that published them. The joint motion should be denied. At a minimum it should be denied as to the Second Cause of Action against Home Builders Association of Greater Knoxville and Homebuilders Association of Greater Chattanooga, which it does not address. In the alternative, the Court should defer ruling under Rule 56(d).

Respectfully submitted,

*/s/ Bruce Ellis Fein*

Bruce Ellis Fein
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390
Attorney for Relator



Case 1:25-cv-00111-TRM-CHS Document 54-1 Filed 10/23/26 Page 25 of 25
PageID #: 1195